IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 10- 112-AU-UNA |
| | ) | |
| XIANG LI and | ) | |
| CHUN YAN LI, | ) | |
| | ) | |
| Defendants. | ) | REDACTED |

## INDICTMENT

The Grand Jury for the District of Delaware charges that:

### I. INTRODUCTION

At all times relevant to this Indictment:

1. Between in or about April 2008 and in or about November 2010, Defendants XIANG Li and CHUN YAN LI operated an online business through which they engaged in the unauthorized access, reproduction and distribution of copyrighted software produced by over 150 manufacturers. In particular, Defendants have engaged in software "cracking;" that is, the willful circumvention of digital license files and access control software created to prevent unauthorized access to copyrighted software products; and have engaged in the unauthorized international distribution and reproduction of "cracked" copyrighted computer software via the Internet. Defendants unlawfully distributed these copyrighted works over the Internet by selling the copyrighted works on websites with the domain names www.crack99.com, www.cad100.net, and www.dongle-crack-download.com (hereinafter referred to as the "Subject Websites").

1

2. Defendants' Subject Websites advertised over two thousand different "cracked" software products for sale at a fraction of their retail prices. The advertised software, most of which was created and copyrighted by companies based in the United States, is used in numerous applications including engineering; manufacturing; space exploration; aerospace simulation and design; mathematics; storm water management; explosive simulation; and manufacturing plant design. The prices listed for these software products on the Subject Websites ranged from $20 to $1,200. The actual retail value of these products ranged from several hundred dollars to over one million dollars.

3. Defendant XIANG LI was the domain name registrant and operator of the Subject Websites. He also was the registered user of the Google email account china9981@gmail.com, which was used to facilitate the sale and transfer of pirated software to website customers. Defendant XIANG LI received the funds generated from the unauthorized sale of the copyrighted works. Furthermore, Defendant XIANG LI distributed illicit funds to other co-conspirators for their work in furtherance of the criminal conduct.

4. Defendant CHUN YAN LI collected monies sent by customers through such remitters as Western Union and MoneyGram as payment for cracked software. Defendant CHUN YAN LI established a bank account at China Merchant's Bank into which the proceeds from the sales of copyrighted software were deposited. Defendant CHUN YAN LI also served as the account point of contact for PayPal, AlertPay and 800-Pay accounts used to receive payments for pirated software.

5. During the conspiracy, Defendants distributed over 500 pirated copyrighted works to at least 325 purchasers located in at least 28 states, including

Delaware, and over 60 foreign countries. More than one-third of these purchases were made by individuals within the United States, including small business owners, military contractors, students, inventors, and engineers.

6. During the course of the conspiracy, the Defendants obtained proceeds in excess of $60,000 from the sale of infringing copyrighted works. The lost retail value of these cracked copyrighted works is in excess of $100,000,000.

## II. ALLEGATIONS COMMON TO ALL COUNTS

7. On or about February 10, 2008, using an address in Chengdu, China, Defendant XIANG LI registered the domain name www.crack99.com. Defendant XIANG LI also registered the domain names www.cad100.net and www.dongle-crack-download.com on different dates in 2007 and 2008. Defendants used these three domain names to post their Subject Websites, from which they advertised and sold the copyrighted works.

8. On or about February 10, 2008, Defendant XIANG LI created a Google email account at the address china9981@gmail.com. Defendant XIANG LI used this email account to communicate with those who purchased software from the Subject Websites. Defendant XIANG LI also used this email account to distribute software to the website costumers.

9. Commercial software is often designed with security features embedded in the software code for the purpose of preventing the unauthorized access or reproduction of the software. At all relevant times, the Subject Websites advertised for sale copyrighted software that has been "cracked;" that is, the access controls for the software have been disabled, removed or otherwise bypassed. The purchaser therefore would have

3

unlimited use of the software. This indictment will refer to software in which the access controls have been circumvented and that is sold without authorization of the copyright owner as "pirated software."

10. The home pages of the Subject Websites list a three-step process for acquiring pirated software: (1) submitting a request to purchase an advertised product to the email mail account china9981@gmail.com; (2) sending payment as instructed; and (3) either receiving downloadable files containing the pirated software via email or a mail shipment containing a disk with the software.

11. Between April 2008 and November 2010, Defendants utilized the email account china9981@gmail.com to process over 500 transactions in which they sold, without license or authorization of the copyright holders, copies of approximately 400 copyrighted works, the access controls to which had been circumvented.

12. On or about January 10, 2009, Defendant XIANG LI, without license or authorization, sold a U.S. customer a copy of "Rockwell RSlogix5000," a software product in which the access controls had been circumvented. This product, which was manufactured by Rockwell Automation, has a retail value of between $2,500 and $8,000. Defendant XIANG LI sold this software to the U.S. customer for $200.

13. On or about January 13, 2009, Defendant XIANG LI, without license or authorization, sold a U.S. customer a copy of "Vericut 6.2," a software product in which the access controls had been circumvented. This product was manufactured by CG Tech. The U.S. customer used Western Union to transfer to Defendant XIANG LI $60 for the software and $35 for the cost of shipping it by disk.

14. In an email exchange with a potential customer on or about February 2, 2009, Defendant XIANG LI stated that "I am not a crack production engineers [sic] (my job is to collect)[.] This is an international organization created to crack declassified document[s]. [sic]"

15. On or about February 5, 2009, Defendant XIANG LI, without license or authorization, sold an Indonesian customer a copy of "Agilent Advance Design System," a software product in which the access controls had been circumvented. This software was originally produced by Agilent Technologies, a U.S. based company that sold this product at a retail price of $229,000. Defendant XIANG LI sold this product to this Indonesian customer for $60.

16. On or about May 6, 2009, a U.S. customer used the online payment service AlertPay to send $60 to Defendant CHUN YAN LI for a copy of "NX Nastran," a software product in which the access controls had been circumvented. This product, which Defendants sold without license or authorization, was manufactured by Siemens and sold at a retail price exceeding $25,000.

17. On or about June 2, 2009, Defendants XIANG LI and CHUN YAN LI, without license or authorization, sold a U.S. customer a copy of "PC-DMIS 4.1," a software product in which the access controls had been circumvented. This product was manufactured by Wilcox Associates, a U.S. company and has a retail value of approximately $12,000. Defendants XIANG LI and CHUN YAN LI sold this software to the U.S. customer for $100.

18. On or about October 16, 2009, Defendants XIANG LI and CHUN YAN LI, without license or authorization, sold a U.S. customer a copy of "GIBBSCAM 2009,"

5

a software product in which the access controls had been circumvented. This product was manufactured by Gibbs and Associates, a U.S. company and has a retail value of approximately $12,000. Defendants sold this software to the U.S. customer for $150.

19. On or about December 8, 2009, Defendants XIANG LI and CHUN YAN LI, without license or authorization, sold a U.S. customer a copy of "ArtCAM 2009," a software product in which the access controls had been circumvented. This product was manufactured by Delcam, and has a retail value of approximately $10,000. Defendants sold this pirated software to the U.S. customer for $100.

### A. January 2010 Controlled Purchase of Satellite Tool Kit Software

20. On or about January 15 and 16, 2010, Defendants XIANG LI and CHUN YAN LI, without license or authorization, sold a copy of "Satellite Tool Kit 8.0" ("STK"), a software product in which the access controls had been circumvented, to an undercover law enforcement agent. This software is a product of Analytical Graphics, Inc. (AGI), based in Exton, Pennsylvania. The software's retail price is over $150,000. AGI had not authorized Defendants to sell, distribute, or otherwise disseminate their product.

21. Pursuant to Defendant XIANG LI's email instructions, the undercover law enforcement agent sent a wire transfer in the amount of $1,000 from a Western Union facility located in Claymont, Delaware to Defendant CHUN YAN LI, in Chengdu, China. The undercover agent sent an e-mail to Defendant XIANG LI informing him that payment had been made and requesting delivery of the pirated software.

22. On or about January 16, 2010, an undercover law enforcement agent received an email from Defendant XIANG LI containing three, compressed electronic files. An undercover agent downloaded each of these files.

23. Each of the downloaded files contained operable professional versions of STK, along with the electronic license keys that control access to the software. The STK product sold to the undercover agents by Defendants contained several different modules or scenario functions generally used by the military and intelligence communities, including 3-D warfare scenarios. In total, the STK software sold to the undercover agents has a retail value exceeding $150,000.

24. The pirated software circumvented the license distribution system set up by AGI to deliver specific licenses needed to operate its software directly to its customers. By circumventing this license management system, Defendants could distribute the pirated software product without any limitations of its usage.

**B.** **February 2010 Controlled Purchase of "Quartus" Software**

25. Between on or about February 19, 2010 and February 24, 2010, Defendants XIANG LI and CHUN YAN LI, without license or authorization, sold copies of "Quartus II Nios Embedded Suite v9.0," "Quartus II v9.0 FPGA Full Working," and "Quartus II DSP Builder 9.0," software products in which the access controls had been circumvented, to an undercover law enforcement agent. This copyrighted software is a product of Altera Corporation. Defendants were not authorized to distribute any of it.

26. On or about February 22, 2010, pursuant to Defendant XIANG LI's email instructions, an undercover agent sent a Western Union payment of $340.00 to Defendant

CHUN YAN LI, in Chengdu, China. This payment was made from a Western Union branch located in Claymont, Delaware.

27. On or about February 24 and 25, 2010, Defendant XIANG LI emailed four compressed electronic files to an undercover agent that contained four software products that are copyrighted and sold and/or distributed exclusively by Altera Corporation. The total retail value of the Altera software products sold to the undercover agents by Defendants is over $10,000.

28. The Altera software products sold by Defendants to the undercover agents had been modified to circumvent the license keys or files that are designed to prevent unauthorized access to Altera's software products.

### C. March 2010 Controlled Purchase of HyperSizer Software

29. Between on or about March 17 and March 19, 2010, Defendants XIANG LI and CHUN YAN LI, without license or authorization, sold copies of "HyperSizer v.5.3.29," and "HyperSizer v.5.3," software products in which the access controls had been circumvented, to an undercover law enforcement agent. These two software products were designed and produced by Collier Research and Development Corporation, based in Newport News, Virginia.

30. On or about March 18, 2010, pursuant to Defendant XIANG LI's email instructions, and undercover agent transferred $200 to Defendant CHUN YAN LI from a Western Union facility in Claymont, Delaware.

31. On or about March 19, 2010, Defendant XIANG LI emailed a hyperlink that allowed the undercover agent to download operable versions of the HyperSizer software. The copy of the HyperSizer software sold to the undercover agent by

Defendants had been modified to bypass the electronic license keys designed to prevent unauthorized access to these products.

32. The HyperSizer software assists in the weight reduction, structural design and stress analysis of the composite materials used in the construction of aircraft and spacecraft. The retail value of the entire HyperSizer product is approximately $50,000.

### III. OBJECT OF THE CONSPIRACY

33. It was an object of the conspiracy charged in Counts I and II to unlawfully obtain commercial advantage and financial gain through the willful and unauthorized circumvention of digital access controls of copyrighted software and through the sale and distribution of such software via the internet.

### IV. MANNER AND MEANS OF THE CONSPIRACY

34. It was a part of the conspiracy charged in Counts I and II that Defendants obtained unauthorized copies of copyrighted works, including computer software, and distributed these copyrighted works throughout the world by means of the Internet, private carriers, China Post and Hong Kong Post mail services.

35. It was further part of the conspiracy charged in Counts I and II that Defendants trafficked in and utilized technologies, products, services, and devices that were primarily designed and produced for the purpose of circumventing the access control and copy prevention systems designed to prevent unauthorized access and copying of copyrighted works.

36. It was further part of the conspiracy charged in Counts I and II that Defendants distributed these copyrighted works without a license, permission, or other authorization from the owners of the copyrighted works.

37. It was further part of the conspiracy charged in Counts I and II that the Defendants used computer servers to host the Subject Websites and maintained download servers containing the unauthorized copies of copyrighted works. Defendants used Google and other e-mail accounts on numerous occasions to communicate with others about the sale, delivery, and installation of the pirated computer software.

38. It was further part of the conspiracy charged in Counts I and II that Defendants used online advertising, including advertising through Google, to promote their websites.

39. It was further part of the conspiracy charged in Counts I and II that Defendants utilized the services of PayPal, Inc., AlertPay and other e-commerce businesses allowing payments and money transfers to be made through the Internet, Western Union and Money Gram and to facilitate the receipt and transfer of funds generated from the sale of copyrighted works.

40. It was further part of the conspiracy charged in Counts I and II that Defendants utilized the services of China Merchant's Bank and the Bank of China to maintain bank accounts for the receipt and transfer of funds generated by the unlawful sale of the copyrighted works.

## V. OVERT ACTS

It was further part of the conspiracy charged in Counts I and II that the following acts in furtherance of and to affect the object of the conspiracy were committed in the District of Delaware and elsewhere:

41. On or about February 10, 2008, using an address in Chengdu, China, Defendant XIANG LI registered the domain name www.crack99.com.

42.     On or about February 10, 2008, Defendant XIANG LI created a Google email account at the address: china9981@gmail.com.

43.     On or about January 15, 2010, Defendant CHUN YAN LI received a wire transfer in the amount of $1,000 from a Western Union facility in Claymont, Delaware, as payment for the unauthorized sale of "Satellite Tool Kit 8.0," a software product manufactured and copyrighted by Analytical Graphics, Inc.

44.     On or about January 16, 2010, Defendants XIANG LI and CHUN YAN LI, without license or authorization, distributed a copy of "Satellite Tool Kit 8.0," a software product in which the access controls had been circumvented.

45.     On or about February 22, 2010, Defendant CHUN YAN LI received a wire transfer in the amount of $340 from a Western Union facility in Claymont, Delaware, as payment for the unauthorized sale of three software products – "Quartus II Nios Embedded Suite v9.0;" "Quartus II v9.0 FPGA Full Working;" and "Quartus II DSP Builder 9.0."

46.     On or about February 24 and 25, 2010, Defendants XIANG LI and CHUN YAN LI, without license or authorization, distributed copies of "Quartus II Nios Embedded Suite v9.0;" "Quartus II v9.0 FPGA Full Working;" and "Quartus II DSP Builder 9.0," software products in which the access controls had been circumvented.

47.     On or about March 18, 2010, Defendant CHUN YAN LI received a wire transfer in the amount of $200 from a Western Union facility in Claymont, Delaware, as payment for the unauthorized sale of "HyperSizer v.5.3.29" and "HyperSizer v.5.3," software products were manufactured and copyrighted by Collier Research and Development Corporation.

48. On or about March 19, 2010, Defendants XIANG LI and CHUN YAN LI, without license or authorization, distributed copies of "HyperSizer v.5.3.29" and "HyperSizer v.5.3," software products in which the access controls had been circumvented.

## COUNT I

### CONSPIRACY TO CIRCUMVENT A TECHNOLOGICAL MEASURE THAT PROTECTS A COPYRIGHTED WORK

49. Paragraphs 1-48 are hereby incorporated by reference as if fully set forth in this Count I.

50. Between in or about April 2008 and in or about November 2010, in the District of Delaware and elsewhere, Defendants XIANG LI and CHUN YAN LI, and others unknown to the grand jury, conspired and agreed, for purposes of commercial advantage and private financial gain, to circumvent a technological measure that effectively controls access to a work protected under Title 17 of the United States Code; to wit, Defendants XIANG LI and CHUN YAN LI circumvented technological measures that controlled access to various copyrighted works, in violation of Title 17, United States Code, Sections 1201(a)(1)(A), and 1204(a)(1) and Title 18, United States Code, Section 2

All in violation of Title 18, United States Code, Section 371.

## COUNT II

### CONSPIRACY TO COMMIT CRIMINAL COPYRIGHT INFRINGEMENT

51. Paragraphs 1-50 are hereby incorporated by reference as if fully set forth in this Count II.

52. Between in or about April 2008 and in or about November 2010, in the District of Delaware and elsewhere, Defendants XIANG LI and CHUN YAN LI, and

others unknown to the grand jury, conspired and agreed to commit an offense against the United States, to wit, during a 180-day period, Defendants did conspire and agree, willfully, and for the purpose of private financial gain, to reproduce and distribute at least ten infringing copies of one or more copyrighted software products, with a total retail value of more than $2,500, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2 and 2319(b)(1)

All in violation of Title 18, United States Code, Section 371.

## COUNT III

### CRIMINAL COPYRIGHT INFRINGEMENT

53. Paragraphs 1-52 are hereby incorporated by reference as if fully set forth in this Count III.

54. Between in or about April 2008 and in or about November 2010, in the District of Delaware and elsewhere, Defendants XIANG LI and CHUN YAN LI, and others unknown to the grand jury, did willfully, for the purpose of private financial gain, infringe the copyrights in various software products, by the reproduction and distribution by electronic means, including via the Internet, during a 180-day period, of ten (10) or more copies of one or more of the copyrighted works, which had a retail value of more than $2,500, in violation of Title 17, United States Code, Section 506(a)(1)(A), and Title 18, United States Code, Sections 2319(b)(1) and 2.

## COUNT IV

### INTERSTATE TRANSPORTATION OF STOLEN GOODS

55. Paragraphs 1-48 are hereby incorporated by reference as if fully set forth in this Count IV.

56. In or about January 2010, in the District of Delaware and elsewhere, Defendants XIANG LI and CHUN YAN LI did unlawfully transport, transmit, and transfer in interstate and foreign commerce, stolen goods, wares, and merchandise, to wit, "Satellite Tool Kit" software, of the value of $5,000 or more, knowing the same to have been stolen, in violation of Title 18, United States Code, Sections 2314 and 2.

## COUNT V

### INTERSTATE TRANSPORTATION OF STOLEN GOODS

57. Paragraphs 1-48 are hereby incorporated by reference as if fully set forth in this Count V.

58. In or about February 2010, in the District of Delaware and elsewhere, Defendants XIANG LI and CHUN YAN LI did unlawfully transport, transmit, and transfer in interstate and foreign commerce, stolen goods, wares, and merchandise, to wit, "Quartus II, Nios Embedded Suite v9.0," "Quartus II v9.0 Field Programmable Gate Array," and "Quartus II DSP Builder" software, of the value of $5,000 or more, knowing the same to have been stolen, in violation of Title 18, United States Code, Sections 2314 and 2.

## COUNT VI

### INTERSTATE TRANSPORTATION OF STOLEN GOODS

59. Paragraphs 1-48 are hereby incorporated by reference as if fully set forth in this Count VI.

60. In or about March 2010, in the District of Delaware and elsewhere, Defendants XIANG LI and CHUN YAN LI did unlawfully transport, transmit, and transfer in interstate and foreign commerce, stolen goods, wares, and merchandise, to wit,

"HyperSizer v.5.3.29" and "HyperSizer v.5.3' software, of the value of $5,000 or more, knowing the same to have been stolen, in violation of Title 18, United States Code, Sections 2314 and 2.

## COUNT VII

### SMUGGLING OF GOODS INTO THE UNITED STATES

61. Paragraphs 1-48 are hereby incorporated by reference as if fully set forth in this Count VII.

62. In or about January 2010, in the District of Delaware and elsewhere, Defendants XIANG LI and CHUN YAN LI did, contrary to law, fraudulently and knowingly import and bring into the United States merchandise, to wit, "Satellite Tool Kit" software, in violation of Title 18, United States Code, Sections 545 and 2.

## COUNT VIII

### SMUGGLING OF GOODS INTO THE UNITED STATES

63. Paragraphs 1-48 are hereby incorporated by reference as if fully set forth in this Count VIII.

64. In or about February 2010, in the District of Delaware and elsewhere, Defendants XIANG LI and CHUN YAN LI did, contrary to law, fraudulently and knowingly import and bring into the United States merchandise, to wit, "Quartus II, Nios Embedded Suite v9.0," "Quartus II v9.0 Field Programmable Gate Array," and "Quartus II DSP Builder" software, in violation of Title 18, United States Code, Sections 545 and 2.

## COUNT IX

### SMUGGLING OF GOODS INTO THE UNITED STATES

65.     Paragraphs 1-48 are hereby incorporated by reference as if fully set forth in this Count IX.

66.     In or about March 2010, in the District of Delaware and elsewhere, Defendants XIANG LI and CHUN YAN LI did, contrary to law, fraudulently and knowingly import and bring into the United States merchandise, to wit, "HyperSizer .5.3.29" and "HyperSizer v.5.3" software, in violation of Title 18, United States Code, Sections 545 and 2.

### FORFEITURE ALLEGATIONS

67.     As a result of the offenses alleged in Counts II and III of this Indictment, Defendants XIANG LI and CHUN YAN LI shall forfeit to the United States, pursuant to Title 17, United States Code, Sections 506(b) and 509(a), and Title 18 United States Code, Section 2323, all copies manufactured, reproduced, distributed, sold, or otherwise used, intended for use, or possessed with intent to use in violation of the offense under Section 506(a), and all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies may be reproduced, and all electronic, mechanical, and other devices for manufacturing, reproducing, and assembling such copies, and any property used, or intended to be used in any manner or part, to commit or facilitate the commission of the offenses in Counts II and III.

68.     Furthermore, upon conviction of an offense alleged in Counts II and III, Defendants XIANG LI and CHUN YAN LI shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to a

violation of 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319.

    69.    If any of the property described above, as a result of any act or omission of Defendant[s]:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) (as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c)).

A TRUE BILL:

_____
Foreperson



DAVID C. WEISS
UNITED STATES ATTORNEY

By: _____
    David E. Hall
    Assistant United States Attorney

By: _____
    Edward J. McAndrew
    Assistant United States Attorney

Dated: November 23, 2010